UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                          Plaintiff,        CRIMINAL CASE NO. 06-20362

v.

                                        HONORABLE PAUL V. GADOLA
                                        U.S. DISTRICT JUDGE

THOMAS HEATH EVANS,

                          Defendant.

_____/

## **ORDER**

### I. Introduction

Defendant Thomas Evans was indicted on July 12, 2006 with two counts. Count I charges him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and 924(e), and Count II charges Defendant with knowingly conspiring with other persons to distribute marijuana, in violation of 21 U.S.C. § 846. A superceding indictment was filed on January 10, 2007, alleging the same crimes, and a second superceding indictment was filed on March 7, 2007.

Now before the Court are Defendant's motion to quash the search warrant [docket entry #45] and motion to suppress evidence [docket entry #36]. Both motions essentially rely on the alleged invalidity of the search warrant used to search Defendant's residence. Defendant's two motions ask this Court to suppress all evidence and derivative evidence resulting from the January 7, 2006 entry, search, and seizure, conducted at 4068 Hunters Circle East, Canton Township, Michigan. Defendant argues that the initial entry was made without a warrant and that the warrant that was subsequently obtained was invalid.

**II.    Background**

On January 7, 2006, a confidential informant ("CI") advised members of the Livingston and Washtenaw Narcotics Enforcement Team (LAWNET) that the CI could obtain approximately one hundred and fifty pounds of marijuana from a subject later identified as Armando Tapia.  Officers observed the transaction between the CI and Tapia and later arrested Tapia at another location.  Following Tapia's arrest, he freely admitted that he had delivered marijuana to the CI.  Tapia also told the officers that earlier that same day he had delivered approximately one hundred and twenty-five pounds of marijuana to a black male named "E".  Tapia did not provide any other information regarding the identity of "E".   Although Tapia could not provide the LAWNET officers with the address of the earlier delivery, Tapia indicated that could lead them to the location.  Tapia then led the LAWNET officers to 4068 Hunter's Circle East, pointed to the residence, and identified it as the location of his prior delivery to "E".

After arriving at the residence, LAWNET officers called Canton Township police.  The marked presence arrived at the home at approximately 11:30p.m.  Following the arrival of the marked vehicles, Michigan State Police Trooper Christopher Corriveau, Drug Enforcement Administration Special Agent Scott Nedoff, a Sergeant from the Canton Township Police Department, and possibly others, approached the door of the home in an effort to conduct a "knock and talk."  Trooper Corriveau testified that a female, later identified as Chelsea Moreno, answered the door.  The officers asked her if they could come inside the home.  Although the officers testified that Moreno allowed them to enter the entryway, Moreno disagrees.  According to Moreno, the officers "stormed past her," Tr. 119, breaking the outer storm door as they forced their way into the

2

home.

It is undisputed that once inside the residence, several officers conducted a protective sweep. Trooper Corriveau testified that he did not participate in the protective sweep but instead remained in the foyer area of the home with Chelsea Moreno. There is no dispute that the officers asked for, but were denied, consent to search the home.

After being denied consent to search the home, Trooper Corriveau left the residence in order to prepare a search warrant. Trooper Corriveau drafted an affidavit in support of the search warrant consisting of nine paragraphs. Two of those paragraphs relate to the specific factual basis in support of a warrant for the Hunter's Circle residence:

> 6. Your Affiant advises that Tapia was arrested on 01/07/2006 at which time he was in formed of his Miranda rights and freely advised that on 01/07/2006 he had delivered approximately one hundred and forty two pounds of marijuana to CI.
> 7. Your Affiant was further advised by Tapia that on 01/07/2006 he had delivered approximately one hundred and twenty five pounds of marijuana to a black male known to him as "E". On that date Tapia then guided your Affiant to the address of 4068 Hunters Circle East where he pointed the house out as being the one that he had delivered the marijuana to.

Affidavit in Support of Search Warrant, p. 2.

Based on the above affidavit, a state court magistrate judge signed the search warrant at 1:54 a.m on January 8, 2007. The police officers then conducted a search and uncovered the incriminating evidence now at issue.

At the evidentiary hearing on Defendant's motions, the parties disputed whether, before the magistrate judge signed the warrant while Corriveau was preparing the affidavit, Corriveau learned of the discovery of incriminating evidence that was found during the protective sweep. Moreno

3

recalls hearing at least one officer say something to the effect of "Got him," while he was in the basement. Moreno did not see the officer who said this, however she testified that he may have been on the cell phone when he said this. Trooper Corriveau testified that he could not be sure that no one at the house called him after he left the residence, he did not remember receiving any such information at any time while preparing the affidavit. Additionally, Trooper Corriveau testified that the only information presented to the Magistrate in support of the warrant was the information contained in the affidavit, more specifically, the information Armando Tapia had provided earlier in the day.

### III. Legal Standard

The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation. . . ." U.S. Const. amend. IV. Probable cause to search has been defined as a "fair probability" that contraband or other evidence of a crime will be found at the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). *See also United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (holding that the "critical element in a reasonable search . . . is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought") (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978), cert. denied, 474 U.S. 852 (1985)).

A determination of probable cause is made in light of the "totality of circumstances." *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983). In *Gates*, the Supreme Court rejected the strict, two-pronged probable cause test established in *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969). The *Aguilar/Spinelli* test required that a search warrant

4

affidavit based on an informant's tip contain information regarding the "reliability or credibility" of the informant and the "basis in knowledge" of his or her tip. The Supreme Court explained that while these elements "should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case, . . . [but] [r]ather . . . they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place." *Gates*, 462 U.S. at 230. "Probable cause is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act.' " *Id.* at 230-231 (quoting *Brinegar v. United States*, 338 U.S. 160 (1949)).

Accordingly, "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A reviewing court should not examine *de novo* the sufficiency of an affidavit supporting a warrant. *Id*. at 236. Rather, "the traditional standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis . . . for conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) (quoting *Gates*, 462 U.S. at 236), cert. denied 479 U.S. 1092 (1987). The reviewing court should pay great deference to a magistrate's probable cause determination and should not set aside a magistrate's finding of probable cause unless it is "arbitrary." *United States v. Weaver*, 99 F.3d

1372, 1377 (6th Cir. 1996). *See also United States v. Giacalone*, 541 F.2d 508, 513-14 (6th Cir. 1976). In doubtful or marginal cases, the reviewing court should uphold the magistrate's finding. *United States v. Johnson*, 34 F. Supp. 2d 535, 540 (E.D. Mich. 1998) (Gadola, J.) (citing *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982)). *See also United States v. Ventresca*, 380 U.S. 102, 108-09 (1965). The rationale for this deference stems from a preference for the search warrant process over warrantless searches. *Johnson*, 34 F. Supp. 2d at 540 (citing *Lockett*, 674 F.2d at 845). A court, reviewing a magistrate's determination as to probable cause in support of a search warrant, limits its review to the four corners of the affidavit. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971) (citing *Aguilar*, 378 U.S. at 109 n.1).

**IV. Analysis**

Although Defendant has presented varied arguments to the Court throughout the filings and the hearing on this matter, the arguments distill down to two essential claims. First, Defendant argues that the search warrant was invalid because the affidavit lacked sufficient probable cause. Second, Defendant argues that the officers were not entitled to maintain the search under the *Leon* good faith exception because they had no reasonable grounds for believing that the warrant was properly issued. *See United States v. Leon*, 468 U.S. 897 (1984). Accordingly, Defendant asks that all evidence obtained as a result of the search be suppressed.

**A.    Probable Cause Determination**

Reviewing the four corners of the affidavit, *Whiteley*, 401 U.S. at 565 n.8, considering all the circumstances set forth in the affidavit before the magistrate judge, *Gates*, 462 U.S. at 230, 238, and granting great deference to the magistrate judge's determination, *Weaver*, 99 F.3d at 1377, the

Court finds that under Sixth Circuit case law, the search warrant was supported by probable cause. In particular, the Court finds the case of *United States v. Pellham*, 801 F.2d 875 (6th Cir. 1986) instructive.

In *Pellham*, officers arrested a man driving a truck that contained marijuana. *Id.* at 876. When asked about the marijuana, the driver revealed that he had obtained the contraband from another individual and provided the address of that supplier. *Id.* The officers then accompanied the driver to the address where the driver visually identified the residence. *Id.* The officers subsequently drafted an affidavit stating:

> On January 8, 1985 the affiant [Swain] talked to Payton Brown who stated to the affiant that within the past twenty-four (24) hours he had been inside the above described residence of Jim Pelham and had seen Jim Pelham storing & selling Marijuana inside the aforementioned residence, the same being located in Memphis, Shelby County, Tennessee.

*Id.*

Following a challenge to the sufficiency of the affidavit supporting the warrant, the Sixth Circuit examined the facts as set forth in the above recited affidavit, and concluded:

> In a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than Brown's direct viewing of marijuana in Pelham's house. *When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the "totality of the circumstances" presents a "substantial basis" for conducting a search for that evidence.* In essence, Swain's affidavit exhibited on its face "the probability . . . of criminal activity."

*Id.* at 878 (citations omitted and emphasis added).

Presented with the rationale of *Pellham*, the Court must conclude that when an affidavit sets forth recently obtained, first-hand knowledge from a named individual, attesting to the existence

7

of contraband at a particular location, the magistrate judge has a substantial basis for determining probable cause exists. *Id. See also United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002) (finding that where the informant had been in the residence within the last twenty-four hours, had observed contraband, and was willing to be named in the affidavit as to those facts, "there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime." (citing *Pellham*, 801 F.2d at 878)); *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (finding that statements based on first-hand observations are entitled to "greater weight than might otherwise be the case."); *United States v. Carter*, 413 F.3d 712 (8th Cir. 2005) (finding that there was sufficient evidence to support a finding of probable cause when a known individual, recently arrested, whom the police had never used as an informant, provided first-hand knowledge of the existence of contraband even though those facts had not been corroborated by the police).

In the present case, Armando Tapia was specifically named in the affidavit. Affidavit, ¶¶ 3-7. The facts in the affidavit indicate that Tapia had recently been to the Hunters Circle residence, within the last twenty-four hours. *Id. at* ¶ 6. Tapia had first-hand knowledge that illegal drugs would be present at the residence because he personally delivered one hundred and twenty-five pounds of marijuana to 4068 Hunters Circle East earlier that day. *Id.* Therefore, pursuant to *Pellham* and *Miller*, based upon the information provided by Tapia, there was a "substantial basis" for the magistrate to conclude that probable cause existed to believe that there was a "fair probability" that illegal drugs would be found at the Hunters Circle residence. *See Pellham*, 801 F.2d at 876; *Miller*, 314 F.3d at 270; *Gates*, 462 U.S. at 238.

Furthermore, there are additional reasons to uphold the magistrate judge's determination that

8

probable cause existed. With respect to Tapia's reliability and veracity, it is true that the affidavit does not provide an explicit statement about the officer's past history with Tapia or the officer's belief that Tapia was truthful. No such statement was provided in the affidavit because the officers did not have a long history of working with Tapia. Nevertheless, the facts within the four corners of the affidavit support a finding by the magistrate judge that Tapia was reliable and truthful. Tapia freely admitted to the officers that he had delivered a significant quantity of marijuana to the confidential informant. Affidavit, ¶ 6. That information was corroborated and verified as truthful by the officers because they had personally witnessed that transaction. *Id.* at ¶¶ 4-5. There is no indication that Tapia provided any information that was inconsistent with the police officers' observations of that transaction.

Second, Tapia's veracity and reliability is supported by the fact that Tapia's post-arrest statement, admitting that he had delivered marijuana to the 4068 Hunters Circle East residence earlier that same day, was a statement made against his own penal interest. Considering the value of statements made by confidential informants against their own penal interest, the Supreme Court has held that such statements support the issuance of a search warrant. *United States v. Harris*, 403 U.S. 573 (1971). Chief Justice Burger, writing for the Court, observed:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, *carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search.*

*Id.* at 583 (plurality opinion) (emphasis added). Accordingly, Tapia's self-incriminating statement

9

must be given more weight than a non-incriminating statement to the police. In so finding, the Court recognizes that Tapia was not an innocent individual when he made this statement, given the fact that Tapia had already been arrested after delivering a significant quantity of marijuana to the confidential informant. Nevertheless, Tapia provided additional information that he had also delivered one hundred and twenty-five pounds of marijuana to another location that same day, thereby further incriminating himself. By directing the police to the location, Tapia was certainly "plac[ing] critical evidence in the hands of the police in the form of [his] own admission." *Id.* Such an admission carries its "own indicia of credibility" that supports a determination of probable cause. *Id.*

Defendant argues that the warrant was invalid because the officers needed to supply additional corroborating evidence to substantiate the affidavit. That argument is flawed. The cases Defendant cites in support of that proposition, unlike *Pellham* and *Miller*, each deal with *anonymous* tipsters or *confidential* informants. *See e.g., United States v. Woosley*, 361 F.3d 924 (6th Cir. 2004); *United States v. Campbell*, 256 F.3d 381 (6th Cir. 2001); *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993); *United States v. Baxter*, 889 F.2d 731 (6th Cir. 1989); *United States v. Scalia*, 993 F.2d 984 (1st Cir. 1993); *United States v. Ruiz*, 822 F. Supp. 708 (D. Kan. 1993). Tapia, as discussed above, was not an anonymous tipster or a confidential informant but instead was a named individual with recent, first-hand knowledge of the situation. *See Pellham*, 801 F.2d at 876; *Miller*, 314 F.3d at 270. In such a situation, the Sixth Circuit case law "make[s] it clear that independent corroboration of an informant's story is not necessary to a determination of probable cause." *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) (finding that an affidavit "can pass muster

*without* stating *both* that the informant gave his or her name *and* that the informant provided reliable information in the past."(citations omitted and emphasis added)). *See also United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (finding that information alleged by a confidential informant need not be corroborated when it is based upon a direct personal observation of the criminal activity) cert. denied, 531 U.S. 907 (2000).

Finally, the Court declines Defendant's invitation to follow the recent case of *United States v. Taylor*, Case No. 05-20052, 2007 WL 851600 (E.D. Mich. Mar. 20, 2007)(Ludington, J.), and conclude that probable cause did not exist. In *Taylor*, the Court accepted and adopted the Report and Recommendation of Magistrate Judge Charles E. Binder, finding that the "motion to suppress [is] granted because the affidavit failed to provide probable cause and because the good faith exception cannot save a 'bare bones' affidavit such as the instant one." *Id*. at *12. Although Defendant asserts otherwise, *Taylor* is readily distinguishable from case now before this Court.

Unlike the instant situation, the information presented to the magistrate judge in *Taylor* was not information provided by an individual with first-hand knowledge of the situation. Instead, the information in the *Taylor* affidavit was based on the hearsay information of an informant. *Contra Pellham*, 801 F.2d at 876*; Miller*, 314 F.3d at 270; *Carter*, 413 F.3d 712. Furthermore, the affidavit failed to disclose that the officers had substantial reason to doubt the veracity and reliability of the informant providing the hearsay information. It was apparent to the police, but was never divulged to the magistrate judge, that the informant was an individual widely known to be untruthful and that had provided false information in the past. *Taylor*, 2007 WL 851600 at *2-4. Accordingly, the Court found that "there were other circumstances which called his veracity into serious question,

11

such that corroboration should have been sought before the warrant issued." *Id.* at *8. That was not the situation in the present case. Here, despite the fact that the officers had not previously used Tapia as an informant, they had no reason to doubt his veracity. Instead, as discussed above, they had several reasons to believe that he was telling the truth because Tapia freely admitted both deliveries, made a statement against his own penal interest, and was willing to be named in the affidavit. There is absolutely no indication in the present case, as was the case in *Taylor*, that the officers knew of– and attempted to conceal– information regarding the unreliability of the source of their knowledge. Instead, the officers in the present case included the information they then possessed and presented that to the magistrate judge for an independent determination of probable cause. Accordingly, considering the significant differences, Defendant's reliance on *Taylor* is misplaced.

Despite the above analysis, this Court is not now concluding that, considering the matter itself, it would have issued a warrant based upon the information that was provided to the magistrate judge. That analysis is not within the role of the Court in this particular situation. It is clear that in the present case the officers could have done more to substantiate the magistrate's probable cause determination. However, the Court's review of the magistrate judge's determination does not consider what, hypothetically, could have been included in the affidavit. Instead, the focus is on the adequacy of what the affidavit actually contained. *Allen*, 211 F.3d at 975. The Court is required to consider only the information contained within the four corners of the affidavit, *Whiteley*, 401 U.S. at 565 n.8, and determine whether,"given all circumstances set forth in the affidavit before him," the magistrate judge's conclusion that there "there is a fair probability that contraband or

evidence of a crime will be found in a particular place," represents a " practical, common-sense decision." *Gates*, 462 U.S. at 232, 238. In this instance, after full consideration of the matter, and based upon the Sixth Circuit precedent, the Court cannot conclude that the magistrate judge's determination that probable cause existed was arbitrary. *See Weaver*, 99 F.3d at 1377. The affidavit contained recent information from Tapia, a named individual with first-hand knowledge, that contraband was present in a particular location. Tapia had personally directed the officers to the location and identified the residence. The information that Tapia provided was also against his interest. Accordingly, under the law of the Circuit, "the affidavit provided sufficient facts from which the magistrate judge could draw an independent conclusion as to the probability (certainty is not required) of what it alleged a search would disclose." *Allen*, 211 F.3d at 975.

### B. Leon Good Faith Exception

Defendant's second argument is that, pursuant to *United States v. Leon*, 468 U.S. 897 (1984), the officers should not be allowed to rely on the invalid warrant because the resultant search was not made in good faith. Because the Court has concluded that the magistrate's determination of probable cause in support of the warrant was not arbitrary, and therefore determined that the warrant was valid, the Court need not address this argument.

### C. Illegal Entry

Finally, the Court notes that in Defendant's initial brief in support of his motion to suppress, Defendant cited several cases for the proposition that evidence seized pursuant to a valid search warrant may nonetheless be suppressed if the Court finds that the evidence was tainted by prior illegal government activity. *See Wong Sun v. United States*, 371 U.S. 471 (1963); *Murray v. United*

13

*States*, 487 U.S. 533 (1988). Defendant has not, however, advanced that conclusory and undeveloped argument following the evidentiary hearing, even when given the chance to submit supplemental briefing on the matter. Nevertheless, the Court has considered the matter and concludes that Defendant's claim is meritless.

Trooper Corriveau's testimony indicated that the only information provided to the issuing magistrate judge was the information contained in the affidavit. A review of the affidavit reveals that the only information it contains was the information obtained Armando Tapia earlier in the day; the affidavit does not contain any information that was acquired during the protective sweep. There has been no evidence presented to the Court that the information obtained from Armando Tapia was obtained by any illegal means. Therefore, even assuming *arguendo* that the initial entry was illegal, Defendant has not made any showing that the warrant was tainted by the illegal entry. Accordingly, even if the initial entry was illegal, Defendant has failed to present a viable argument to suppress the evidence seized subsequent to the valid search warrant. *See United States v. Jenkins*, 396 F.3d 751, 757-58 (6th Cir. 2005) (finding that under the independent source doctrine, a warrant is not invalid merely because illegally obtained information is presented to the magistrate judge, but the illegal information must also affect the magistrate's decision regarding the issuance of the warrant). Accordingly, the Court declines to adopt Defendant's perfunctory argument made pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963).

**V. Conclusion**

**ACCORDINGLY**, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to quash the search warrant [docket entry #45] and motion to suppress evidence

[docket entry #36] are **DENIED**.

**SO ORDERED.**

Dated:   July 23, 2007                                    s/Paul V. Gadola
                                                         HONORABLE PAUL V. GADOLA
                                                         UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   July 23, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:      Nancy A. Abraham; Robert W. Haviland; Richard G. Convertino            , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                   .

                                                         s/Ruth A. Brissaud
                                                         Ruth A. Brissaud, Case Manager
                                                         (810) 341-7845